THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN
JONES, Defendant-Appellant.

First District (4th Division)   No. 1—03—2421

Opinion filed May 19, 2005.

Theodore A. Gottfried and Vicki P. Kouros, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and William Toffenetti, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE REID delivered the opinion of the court:

Following a jury trial, Melvin Jones was convicted of first degree murder and sentenced to a term of 65 years in prison. This is the direct appeal from that conviction and sentence. On appeal he argues that the 25-year sentence enhancement should not have been applied to him because it was based on the murder victim's death. He argues the sentence enhancement should only apply to an injury or death of a person other than the victim. Jones also argues the additional 25 years constitutes an improper double enhancement and is, therefore, unconstitutional. He further argues that the enhancement is improper because it does not bear a reasonable relationship to the public interest of punishing the risk that firearms pose to others when used in the commission of murder. For the reasons that follow, we affirm the conviction and sentence.

## BACKGROUND

On January 8, 2000, in the midst of a gang war between two factions of the Gangster Disciples (GDs), Jones shot and killed Jerry

Green. The two warring factions are the Third Ward GDs and the No Limit GDs. In late 1999, Lawrence Green, the leader of the No Limit GDs, put a "hit" out on any member of the Third Ward GDs. The victim, Jerry Green, was identified as Lawrence Green's son's mother's nephew. In response, Leonard Kline, the leader of the Third Ward GDs, put a "hit" out on Green and any of his followers. The Third Ward GDs enlisted the defendant, Antolito Jones and Travis Ashby to carry out the murders.

The three Third Ward GDs met at Kline's house and planned a murder. They would meet at 73rd and Damen in Chicago at 4 a.m. From there these men would find, shoot and kill Green or some other member of the No Limit GDs. Early in the morning on January 8, the meeting took place. Ashby got guns from Kline's house. Defendant carried a chrome .380-caliber semiautomatic handgun, Antolito Jones carried a .357 revolver, while Ashby kept a handgun for himself. The three men walked west from 73rd and Damen until they could hide themselves in a gangway across the street from Green's house. Jerry Green, the victim, who was not a member of any gang, was shot dead after leaving Curtis Moore's home. Moore and Green were friends. There was no eyewitness to the shooting, but Moore testified that Green stopped by Moore's lounge and helped him clean up after closing. At approximately 2 a.m., Moore and Green drove to another friend's house but did not go inside. Green later drove Moore home and both men went inside Moore's house. When the victim left for his car, he was approached by the armed men, who began calling him names. The victim tried unsuccessfully to get into his car. Defendant started shooting and continued to shoot until the victim fell to the ground. Defendant subsequently returned the gun he used to Kline. At the time of the shooting, Moore heard 5 or 10 gunshots. Moore explained that he looked out of his window and saw Green lying in the street next to his car.

The police arrived at the scene shortly after the shooting. The police recovered 11 shell casings and 1 bullet fragment from the scene. These shell casings were initially all characterized as .9-millimeter shell casings, but it was later determined that there were two .9-millimeter casings and nine .380 shell casings. The police also recovered six .380 shell casings, two .9-millimeter shell casings and one fired bullet from the scene of the murder. Two additional medium-sized bullets were recovered from the victim's body.

Detectives spoke with Lawrence Green, who had been sleeping in the basement bedroom when the shots were fired. Lawrence Green explained to them that, two days previously, he had been shot at in the same neighborhood. Lawrence Green identified one of those shoot-

ers as Leonard Kline and the other as the defendant. Lawrence also turned over two bullet fragments from that earlier shooting. The investigation continued, resulting in a stop order being submitted by Detective Lanihan for the defendant, who was subsequently apprehended. Detective Roger Murray interviewed the defendant, who admitted to killing the victim. The defendant's statement was videotaped.

Jones was charged by way of indictment with six counts of first degree murder. Jones was also charged with personally discharging a firearm that proximately caused Green's death. At trial, the videotaped confession was presented to the jury. Evidence was also presented establishing that the bullets recovered from the scene and from the victim's body came from the same gun, a .380-caliber weapon. The defendant opted not to testify on his own behalf. The jury found this defendant guilty of both first degree murder and personally discharging the firearm that killed the victim. The 65-year sentence that followed the jury trial consisted of 40 years for the murder and an additional 25 for personally discharging the firearm.

## ANALYSIS

### Improper Enhancement

Jones argues on appeal that the phrase "another person" found in the 25-year-to-natural-life enhancement provision contained in section 5—8—1(a)(1)(d)(iii) of the Unified Code of Corrections should be interpreted to apply only in cases where the basis for the enhancement is not the murder victim's death. 730 ILCS 5/5—8—1(a)(1)(d)(iii) (West 2000). Jones asks this court to vacate the enhancement to his sentence. He argues that the phrase "another person" must apply to someone other than the murder victim because, if it applies to the murder victim, the requirements of the statute could only be met in the most unusual of circumstances. According to Jones, when the murder victim forms the basis of the enhancement, death by firearm will almost always be the case. He therefore contends that, in that situation, the causing of "great bodily harm, permanent disability, permanent disfigurement" becomes superfluous language. He asks this court to construe the statute so as to give reasonable meaning to all words and sentences and not to render any portion superfluous.

In the alternative, assuming this court is not persuaded that the plain language of the statute requires injury to someone other than the victim, Jones argues the statute is ambiguous. As an ambiguous statute, Jones asks this court to resort to aids of statutory construction. Jones believes the legislature's purpose in adopting the enhancement provision was to add extra time when a bystander is injured dur-

ing a murder. He argues the legislature was primarily concerned with the potential for harm to others when firearms are used in the commission of felonies. Jones focuses his interpretation of the legislative history on section 33A—1(a) of the Criminal Code of 1961 (720 ILCS 5/33A—1(a) (West 2000)). In that section, the legislature discusses that the "use of a firearm greatly facilitates the commission of a criminal offense because of the more lethal nature of a firearm and the greater perceived threat produced in those confronted by a person wielding a firearm." 720 ILCS 5/33A—1(a)(2) (West 2000). The legislature also indicated that the risk of harm to more people increases with the use of firearms. This includes victims, bystanders and law enforcement personnel. Jones chooses to view this as being a legislative focus on others, not just victims.

The State responds that, based upon the plain language of the statute, the defendant's position is untenable. The State maintains that the phrase "another person" as used in the statute clearly applies to a person other than the defendant, not a person other than the victim. As a result, a sentencing enhancement is not warranted when the only person injured is the defendant himself. According to the State, the purpose of the sentence enhancement statute is to deter the use of firearms and was meant to apply to all cases where a firearm seriously injures or kills someone, not just in cases where an additional bystander is injured or killed. The State maintains that Jones has selectively chosen to emphasize only portions of the expressed legislative intent. According to the State, a fair reading of the entire statute, including the legislative history and commentary, demonstrates that the legislature has always wanted to punish those criminals who possess and/or discharge firearms in the commission of their offenses. The State argues that, merely because some of the possible factual permutations that *could* arise are more remote than others does not mean they are impossible.

Jones argues in reply that the State is ignoring the rule of statutory construction that any ambiguity in a penal statute should be strictly construed in favor of the defendant. Jones believes it is clear that, with that ambiguity construed in his favor, the legislative intent is really to protect bystanders and law enforcement personnel. Jones is also not asking for a cross-comparison analysis. He is arguing that his add-on sentence must be vacated, not merely reduced.

"A statute is presumed constitutional, and the party challenging the statute bears the burden of demonstrating its invalidity." *People v. Powell*, 355 Ill. App. 3d 124, 130 (2004), citing *People v. Malchow*, 193 Ill. 2d 413, 418 (2000). "A court has a duty to construe a statute in a manner that upholds its validity and constitutionality if it can reason-

ably be done." *Powell*, 355 Ill. App. 3d at 130, citing *Malchow*, 193 Ill. 2d at 418. "The question of whether a statute is constitutional is subject to *de novo* review." *Powell*, 355 Ill. App. 3d at 130, citing *People v. Carney*, 196 Ill. 2d 518, 526 (2001).

■ Jones argues that the trial court erred in its application of the statutory provision that authorized the addition of a 25-year enhancement to his sentence for murder. 730 ILCS 5/5—8—1(a)(1)(d)(iii) (West 2000). "Public Act 91—404 amended the penalty provisions of several statutes by adding what have been referred to as the '15/20/25-to-life' provisions. Pub. Act 91—404, § 5, eff. January 1, 2000. Under these provisions, a mandatory enhancement is added to the defendant's sentence if he used a firearm in the commission of the offense. The length of the enhancement depends on how the firearm was used." *People v. Moore*, 343 Ill. App. 3d 331, 342-43 (2003), citing *People v. Moss*, 206 Ill. 2d 503, 506 (2003). The relevant portion of the "15/20/25-to-life" provisions states:

"Under the '15/20/25-to-life' provision, a defendant's sentence is enhanced if he utilizes a firearm while committing the offense of first degree murder. See 730 ILCS 5/5—8—1(a)(1)(d)(i) through (a)(1)(d)(iii) (West 2000). If the defendant either was 'armed with a firearm' or 'personally discharged a firearm' while committing first degree murder, the circuit court must add 15 or 20 years to his sentence, respectively. See 730 ILCS 5/5—8—1(a)(1)(d)(i), (a)(1)(d)(ii) (West 2000). If, however, he 'personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court.' 730 ILCS 5/5—8—1(a)(1)(d)(iii) (West 2000)." *Powell*, 355 Ill. App. 3d at 129 n.1.

"When construing a statute, a court is required to ascertain and give effect to the intent of the legislature." *People v. Carter*, 213 Ill. 2d 295, 301 (2004), citing *People v. Latona*, 184 Ill. 2d 260, 269 (1998). " 'The most reliable indicator of legislative intent is the language of the statute, which, if plain and unambiguous, must be read without exception, limitation, or other condition.' " *Carter*, 213 Ill. 2d at 301, quoting *People v. Davis*, 199 Ill. 2d 130, 135 (2002). "Criminal or penal statutes must be strictly construed in the defendant's favor, 'and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute.' " *Carter*, 213 Ill. 2d at 301, quoting *Davis*, 199 Ill. 2d at 135, citing *People v. Laubscher*, 183 Ill. 2d 330, 337 (1998), *People v. Woodard*, 175 Ill. 2d 435 (1997), and *People v. Shinkle*, 128 Ill. 2d 480, 486 (1989).

■ "[T]he intent of the firearm enhancements is to punish the use

of a firearm \*\*\* in connection with the commission of another felony, be it armed robbery, aggravated kidnapping, or first degree murder." *Powell*, 355 Ill. App. 3d at 133, citing 720 ILCS 5/18—2, 10—2, 18—4 (West 2000), and 730 ILCS 5/5—8—1(a)(1)(d)(i) through (a)(1)(d)(iii) (West 2000). "[T]he 25-year firearm-enhancement provision is not so disproportionate to the offense of first degree murder by the personal discharge of a firearm causing injury or death that it shocks the moral sense." *People v. Sawczenko-Dub*, 345 Ill. App. 3d 522, 530 (2003). The legislative intent is to deter and penalize the illegal use of firearms, specifically to help prevent brutal and heinous murders. It is because " '[a] firearm gives a perpetrator a strong advantage over the victim and effectively deters the victim's escape. A firearm is particularly lethal to the victim of the underlying crime as well as others in the vicinity; and a firearm allows the perpetrator to effortlessly and instantaneously execute an intent to kill once it is formed.' " *Sawczenko-Dub*, 345 Ill. App. 3d at 530-31, quoting *People v. Zepeda*, 87 Cal. App. 4th 1183, 1215, 105 Cal. Rptr. 2d 187, 207-08 (2001). Because the intent of the legislature has been to apply a more severe punishment for the crime depending on whether harm is occasioned through the use of a firearm, we cannot interpret the statue in the manner suggested by the defendant. The plain and ordinary meaning of the phrase "of another," when considered in the context of the entire statute and the legitimate statutory purposes thereof, is that the defendant causes harm to a person other than himself or herself. This is consistent with the fact that, had the defendant merely discharged his weapon without making contact, he would only have been eligible for the 20-year enhancement and, had he merely been carrying the firearm at the time, the potential enhancement would be 15 years. In addition to the "15/20/25-to-life" provisions, section 5—8—1 also imposes enhanced punishment for killing multiple people and a separate enhancement trigger for killing law enforcement personnel. In light of these separate enhancement triggers, in order for the entire statue to remain consistent, the "another person" language in this subsection must mean a person other than the defendant. We believe the use of the phrase "another person" is unambiguous when interpreted in context of the entire statute. It is intended to cover victims and bystanders. Because there is no real ambiguity here, we are not required, as the defendant suggests, to resort to extrinsic aids for construction or to construe the language in favor of any particular party.

## Double Enhancement

Jones next argues that, if the "death of another person" portion

of the enhanced sentencing provision is satisfied by the death of the victim, it amounts to additional punishment for an element that is inherent in the offense itself, the causing of death. He argues the death of the victim amounts to an improper double enhancement because this single factor of the death is being used as both an element of the crime and as an aggravating factor justifying the imposition of a harsher sentence than may have otherwise been imposed. Jones contends that, under the statute, where no person is injured other than the victim, the same injury or death constitutes an element of the offense and a basis for the sentencing enhancement. The trial court cannot impose a sentence under the enhancement statute for mere possession or even discharge of a weapon; there must be great bodily harm or death before the enhancement provision kicks in. Jones admits that other cases have addressed and rejected an argument similar to the one he now makes on the basis that it is the use of the firearm that triggers the enhancement, not the death itself. These cases include *People v. Bloomingburg*, 346 Ill. App. 3d 308, 324-26 (2004), *Sawczenko-Dub*, 345 Ill. App. 3d at 537-39, and *Moore*, 343 Ill. App. 3d at 347-48. Jones recognizes that, in *Bloomingburg*, *Sawczenko-Dub*, and *Moore*, because a firearm is not needed to cause death, the firearm factor accounts for only one enhancement. Despite the obstacles of these other cases, Jones argues that this court has misconstrued the double enhancement argument as it is applied to this statutory provision, resulting in a "25-to-life" enhancement. Jones argues that the only difference between this enhancement provision and others in the statutes is the death.

The State responds that the use of the firearm is not an element of the crime of murder. As a result, it cannot amount to a double enhancement. The use of the firearm is the manner in which death is caused; it is an aggravating factor that is only used once in sentencing. The State argues that the general prohibition against double enhancements is a rule of statutory construction, not one of constitutional scope that would result in a bar. In this case, the State contends there is but one enhancement for killing someone by shooting him or her with a firearm. The shooting with a firearm is not inherent in the offense as there are many other ways to kill someone and still be guilty of first degree murder. As a result, the State urges this court to hold that the defendant's assertion that the enhancement punishes the causation of death is misplaced. In the alternative, the State argues that double use of a single factor is permitted if it was intended by the legislature. If this court should find that a double enhancement has occurred, the State argues it was clearly intended by the legislature.

Jones replies that he never argued that the firearm conduct is

both an element of the offense and the sentencing enhancement. He argues the problem is that the "causing death" portion is both an element and a sentencing enhancement. Jones also argues that *Moore* and *Sawczenko-Dub* are flawed because they misconstrued the double enhancement argument as it is applied to the "25-to-life" provision. Jones claims it is wrong to focus exclusively on firearm use. He claims it is the element of death or causing death that presents the double enhancement problem.

■ "Double enhancement occurs when a single factor is used both as an element of the crime and as an aggravating factor justifying the imposition of a harsher sentence than may have otherwise been imposed." *People v. Thompson*, 354 Ill. App. 3d 579, 591-92 (2004), citing *People v. Moss*, 206 Ill. 2d 503, 533 (2003). We find no double enhancement in this case. "Firearm use is not inherent in the offense of first degree murder." *Thompson*, 354 Ill. App. 3d at 592, citing 720 ILCS 5/9—1(a) (West 2002). "It is when first degree murder is committed by discharging a firearm that the sentence is enhanced. In this respect, the first degree murder sentencing statute reflects the pattern contemporaneously established with regard to several other serious felony offenses, similarly enhancing the punishment for firearm use during the commission of these offenses." *Thompson*, 354 Ill. App. 3d at 592, citing *Moss*, 206 Ill. 2d at 514; *Sawczenko-Dub*, 345 Ill. App. 3d at 537-39 (it is the use of the firearm to cause the death of the victim that triggered the enhancement, not the death itself); *Bloomingburg*, 346 Ill. App. 3d at 325-26 (it is the manner of death, that it occurred as a result of the discharge of a firearm, rather than the fact of death, that is the focus of the enhancing provision).

## Proportionate Penalties

■ Finally, Jones argues that the statute mandating the enhancement of the sentence of any defendant convicted of first degree murder is unconstitutional because it does not bear a reasonable relationship to the public interest of punishing the risk that firearms pose to others when used during the commission of the murder. He argues that, because the normal sentencing range for first degree murder is 20 to 60 years (730 ILCS 5/5—8—1(a)(1)(a) (West 2000)), adding an additional 25 years to life punishes the means of the crime more harshly than the crime itself. Jones argues this violates both due process of law and the proportionate penalties clause.

The State responds that the "25-to-life" enhancement applied to this defendant is reasonably related to the goal of deterring the use of firearms during the commission of murder. The State argues the defendant's entire argument is based on a flawed premise. Defendant

is looking at the threat of harm and concluding that it is being more heavily punished than the harm itself. The State argues this is incorrect because, in a due process violation claim, this court must determine whether the penalty for the given offense is reasonably related to the goal of the legislature. The State maintains that the personal discharge of the firearm is not punished more severely than the actual harm because they are both elements of the same offense. The aggravating factor of personally discharging a firearm that proximately causes injury or death is only triggered through the commission of the murder. Upon commission of each element, one aggregate penalty is prescribed by the legislature.

In reply, Jones argues that the use of the firearm poses no greater risk of harm to the murder victim, but only increases the risk of harm to others. Therefore, he argues it is necessarily the risk of harm that the legislature seeks to deter through the sentencing enhancement. Jones accuses the State of failing to explain how the "25-to-life" enhancement represents a reasonable means of deterring the use of guns that cause death. Jones does not argue that the sentences for first degree murder and the personal discharge of a firearm are discrete. He claims the fact remains that the add-on provision punishes defendants more severely than if they were sentenced to first degree murder without the enhancement. Jones argues the State is without authority for its position that the due process analysis does not involve comparing two elements of the same offense. Jones claims the State's position is illogical as it implies that an enhancement provision is exempt from due process.

"The proportionate penalties clause of the Illinois Constitution provides that '[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.' " *Bloomingburg*, 346 Ill. App. 3d at 322, quoting Ill. Const. 1970, art. I, § 11. " 'In evaluating whether a proportionate penalties violation has been established, the central question is whether the penalty at issue has been set by the legislature "according to the seriousness of the offense." [Citations.]' " *Bloomingburg*, 346 Ill. App. 3d at 322, quoting *People v. Moss*, 206 Ill. 2d 503, 522. The Illinois Supreme Court has identified three tests to determine if a proportionate penalties violation has occurred. *Bloomingburg*, 346 Ill. App. 3d at 322, citing *People v. Hill*, 199 Ill. 2d 440 (2002). The first test is applied when a single offense is challenged. *Bloomingburg*, 346 Ill. App. 3d at 322 n.2, citing *People v. Davis*, 177 Ill. 2d 495, 502 (1997). In the first test, we look to see if " 'a penalty *** is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community.' " *Bloom-*

*ingburg*, 346 Ill. App. 3d at 322, quoting *Hill*, 199 Ill. 2d at 452. The second test is applied when two similar or related offenses are to be compared. *Bloomingburg*, 346 Ill. App. 3d at 322, citing *Davis*, 177 Ill. 2d at 502. Under the second test, " 'a penalty is invalid *** where similar offenses are compared, and conduct that creates a less serious threat to the public health and safety is punished more severely.' " *Bloomingburg*, 346 Ill. App. 3d at 322, quoting *Hill*, 199 Ill. 2d at 452. The third test for a violation of the proportionate penalties clause, "when identical offenses are given different sentences" (*People v. Hill*, 199 Ill. 2d 440, 452 (2002)), "is applied when comparing two identical offenses, *i.e.*, where the same conduct constitutes both offenses or when two different offenses have identical elements." *Bloomingburg*, 346 Ill. App. 3d at 322 n.4, citing *Davis*, 177 Ill. 2d at 503, and *People v. Lewis*, 175 Ill. 2d 412, 423 (1996). "Under the third test *** 'the elements of the respective offenses must be *identical* before the proportionate penalties clause will be implicated.' " (Emphasis in original.) *Bloomingburg*, 346 Ill. App. 3d at 322, quoting *People v. Graves*, 207 Ill. 2d 478, 483 (2003).

"[I]t is the legislature's function and role to declare and define criminal offenses and to determine the nature and extent of punishment for their commission in order to protect the interests of society." *Thompson*, 354 Ill. App. 3d at 592-93, citing *People v. Steppan*, 105 Ill. 2d 310, 319-21 (1985). "This function includes mandatory sentencing schemes." *Thompson*, 354 Ill. App. 3d at 593, citing *Hill*, 199 Ill. 2d at 447. "Generally, in order to survive a due process and proportionate penalties challenge, the penalty must be ' "reasonably designed to remedy the evils that the legislature has determined to be a threat to the public health, safety, and general welfare." ' " *Thompson*, 354 Ill. App. 3d at 593, quoting *People v. Lombardi*, 184 Ill. 2d 462, 469 (1998), quoting *People v. Hickman*, 163 Ill. 2d 250, 259 (1994). As we have learned from our review of *Sawczenko-Dub, Moore, Bloomingburg* and *Thompson*, "the purpose underlying the sentencing-enhancing provision at issue is to deter the use of firearms in the commission of murder." *Thompson*, 354 Ill. App. 3d at 593, citing *Sawczenko-Dub*, 345 Ill. App. 3d at 530. We find no compelling reason to depart from the wisdom of those cases, as that is a legitimate statutory purpose despite the fact that an enhanced sentence can exceed the statutory maximum for the unenhanced crime. That is the very reason why the legislature has adopted such a hard-line attitude toward the use of firearms to commit murder, to deter and discourage such conduct.

## CONCLUSION

In light of the foregoing, the defendant's conviction and sentence are affirmed.

Affirmed.

GREIMAN and QUINN, JJ., concur.