# Illinois Official Reports

## Appellate Court

---

### *People v. Marion*, 2015 IL App (1st) 131011

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARVEN MARION, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-13-1011 |
| Filed<br>Modified upon<br>denial of rehearing | March 31, 2015<br><br>May 12, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-CR-16029; the Hon. Charles P. Burns, Judge, presiding. |
| Judgment | Reversed; convictions vacated. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Deborah Nall, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Margaret M. Smith, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE NEVILLE delivered the judgment of the court, with opinion.<br>Presiding Justice Simon and Justice Liu concurred in the judgment and opinion. |

**OPINION**

¶ 1 This case comes before the appellate court for a third time. A grand jury charged defendant, Darven Marion, with possession of cocaine and cannabis. Marion moved to dismiss the indictments based on allegations that a police officer promised that the State would not arrest him for the narcotics offenses if Marion helped police with crime prevention efforts. The trial court denied Marion's motion to dismiss the indictments and, in a bench trial, found Marion guilty of possessing cocaine and cannabis. On appeal, Marion argued that the court erred when it denied his motion to dismiss the indictments. We vacated the convictions and remanded for completion of the hearing on Marion's motion to dismiss. *People v. Marion*, No. 1-08-2465 (2010) (unpublished order under Supreme Court Rule 23).

¶ 2 At the hearing on remand, the judge, who had not presided at the initial hearing on the motion to dismiss, read the transcripts from that hearing and found that Marion did not testify credibly. The judge reinstated the convictions. On the second appeal, we found nothing inherently incredible about Marion's testimony. We reversed and remanded a second time for completion of the hearing on Marion's motion to dismiss the indictments. *People v. Marion*, 2012 IL App (1st) 082465-U.

¶ 3 At the hearing on the second remand, prosecutors presented the testimony of a police officer who said police never promised Marion anything at all for the help he provided. The trial judge found the officer credible and therefore held that Marion failed to prove an enforceable agreement with police. The judge additionally held that even if Marion had testified truthfully, police lacked authority to promise not to arrest a suspect in exchange for help with police work. The judge denied Marion's motion to dismiss the indictments and reinstated the convictions.

¶ 4 On this third appeal, we reject the trial court's credibility determination. We also hold that police have authority to agree not to arrest a suspect in exchange for cooperation with police work. Accordingly, we reverse the trial court's judgment.

¶ 5 BACKGROUND

¶ 6 Police arrested Marion on June 21, 2006, charging him with possession of more than 15 grams of cocaine and more than 30 grams of cannabis. A grand jury later indicted Marion for possession of cocaine and cannabis with intent to deliver. Marion moved to dismiss the indictments based on an agreement he allegedly reached with some of the officers involved in his arrest.

¶ 7 The Evidentiary Hearing

¶ 8 The trial court held an evidentiary hearing on the motion to dismiss the indictments. Marion testified that shortly after midnight on June 21, 2006, seven or eight police officers approached him as he stood outside his car, near the intersection of Harrison and Kolmar, talking to John Herndon and another friend. According to Marion, some officers took the keys from his car and left the scene. A half hour later, a call came in to one of the officers who had stayed with Marion. The officers at the scene handcuffed Marion and Herndon and drove them in a police car to an address a few blocks away, where Marion used an apartment to store his

furniture and to stay overnight sometimes. Officers came out of that building with some bags, which they claimed held drugs they found in the apartment Marion used. The officers then removed from Marion's back pocket about $7,000 in cash. Marion testified that he had just finished gambling.

¶ 9    According to Marion's testimony, some of the officers then drove him back to his car. One of the officers asked Marion, "[Y]ou want to help yourself in this case?" Marion said yes. The officer said, "[Y]ou got some guns?" Marion said he had none, but he knew how to get some. Marion testified that the officer said, "[Y]ou give me some guns, you can leave with your money and we won't even pursue this case."

¶ 10    Marion testified that he then placed a few calls on his cell phone. The persons he called delivered guns to nearby locations, as Marion requested. Marion directed officers to an address near Van Buren and Kolmar, where they recovered two guns, and to Harrison and Kilbourn, where they recovered a third gun. Marion admitted that he did not remember the name of the officer who made the promise.

¶ 11    Marion called as a witness Officer Joe Ferenzi, who wrote a report concerning Marion's arrest. Ferenzi confirmed that other officers recovered three guns, within an hour of Marion's arrest, based on information the officers learned from Marion. Marion then rested on his motion to dismiss the indictments.

¶ 12    Before the State began to present evidence on the motion, the trial court denied the motion to dismiss the indictments because the State had not yet filed charges against Marion at the time the officer offered not to pursue charges in exchange for the information Marion provided. In the course of making the ruling, the court noted, "I certainly believe from Officer Ferenzi's testimony and combined with your client's testimony that he did give information."

¶ 13    A different judge presided at the bench trial. The trial court found Marion guilty of possessing more than 30 grams of cannabis and more than 15 grams of cocaine. Because of Marion's prior convictions for armed robbery and unlawful use of a weapon by a felon, the trial court sentenced Marion to five years for possession of cocaine and three years for possession of cannabis, with the sentences to run concurrently.

¶ 14                                   Appeal

¶ 15    On appeal, this court held that a suspect and the State could enter into an enforceable cooperation-immunity agreement before the filing of formal charges. *Marion*, No. 1-08-2465. We remanded for completion of the hearing on Marion's motion to dismiss the indictments.

¶ 16                         Remand and Second Appeal

¶ 17    On remand, Marion presented a transcript of the testimony he gave at the hearing on his motion to dismiss the indictments. The judge on remand, who had not presided at the original hearing on the motion to dismiss, read the transcript and found Marion's testimony not credible. The judge denied Marion's motion to dismiss the indictments.

¶ 18    On the second appeal, this court noted first that because the trial court based its findings solely on documents which this court could read just as well as the trial judge, the *de novo* standard of review applied. See *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154 (2007); *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009). This court found nothing inherently incredible about Marion's testimony. We remanded to the trial court for completion

of the hearing on Marion's motion to dismiss the indictments. We specified that the State could either (1) argue that police lacked authority to make the promise to which Marion testified, or (2) present evidence to contradict Marion's testimony that police made a promise. We said that if the State chose to contradict Marion's testimony, the State would "need to present testimony that explains Marion's decision to give the police information leading to the discovery of three guns without hearing from the police anything that led him to expect favorable treatment in exchange for the information." *People v. Marion*, 2012 IL App (1st) 082465-U, ¶ 27.

¶ 19                                Hearing on Second Remand

¶ 20    On the second remand, the State presented Officer Ferenzi as its sole witness. Ferenzi testified that on June 21, 2006, he stayed with Marion from the time police stopped him until he left the custody of the Chicago police department and that Marion had no opportunity to speak with other police officers outside of Ferenzi's presence. No officer other than Ferenzi discussed any deal with Marion. Ferenzi said that Marion initiated a discussion with Ferenzi by saying that he "wanted to try to work out something so he wouldn't get arrested for the narcotics." According to Ferenzi, Marion said that he "could possibly get some rifles if he could get out of the arrest." Ferenzi answered that if Marion delivered rifles to the police, Ferenzi "would talk to the State's Attorney and see if they could be more lenient with the case against him." Ferenzi swore that he did not promise not to arrest Marion for the narcotics. Ferenzi emphasized that Marion specifically offered to produce rifles, not handguns, and the difference mattered to Ferenzi because he considered rifles more dangerous.

¶ 21    Ferenzi admitted that Marion made phone calls and then directed police officers to two specific locations where the officers found a total of three handguns, but no rifles. Ferenzi added that at the second location, along with handguns, officers found $200 in cash. Because Marion never produced any rifles, Ferenzi did not talk to the State's Attorney about treating Marion leniently. On cross-examination, Ferenzi admitted that in his arrest report, he did not mention any discussion about rifles.

¶ 22    The State argued both that Ferenzi had credibly refuted Marion's testimony and that police lacked authority to make the promise Marion said they made. The trial judge agreed with both arguments. The judge specifically found Ferenzi "very credible." The judge said Ferenzi "would be more concerned with rifles *** and *** the idea of providing information came from the defendant, it did not come from the officer." The judge added:

> "But even if the Appellate Court tells me I was wrong after making all of the credibility determinations here, I do not believe that a promise was, in fact, made for this particular defendant to give information on an unrelated case or non related investigation in exchange for him being not charged in this matter.
>
>   Since I don't believe that the testimony of the defendant is credible in light of all the circumstances in this matter, I don't believe the Petitioner has met [his] burden in the matter."

¶ 23    The trial judge found that police promised nothing in exchange for Marion's help finding handguns and getting them safely off the street. The court denied the motion to dismiss the indictments. Marion again appeals.

¶ 24                                    ANALYSIS

¶ 25    The trial judge based his decision on both a finding of fact and a legal ruling. We review the legal ruling *de novo*, and we review the finding of fact to determine whether it is against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001).

¶ 26                            Credibility Determination

¶ 27    "The finding of the trial judge as to the credibility of the witnesses is entitled to great weight. However, we cannot, in every case, accept the trial judge's finding as conclusive ***. *** Where the State's evidence is improbable, unconvincing and contrary to human experience, we have not hesitated to reverse the judgments of conviction." *People v. Dawson*, 22 Ill. 2d 260, 264-65 (1961); see *People v. Coulson*, 13 Ill. 2d 290, 296-97 (1958).

¶ 28    Ferenzi testified that Marion, with no prior discussion with police and no direction from Ferenzi, spontaneously offered to produce rifles in exchange for an agreement not to arrest him for narcotics possession. While Ferenzi and the trial judge both explained the importance of rifles, they offered no explanation for how Marion would know, before any discussion, that Ferenzi would consider a deal for rifles but not for handguns. Marion's spontaneous offer makes no sense at all when Marion can produce only handguns, not rifles. Ferenzi and Marion both testified that Marion made only a few phone calls before telling police where to find the handguns. Ferenzi did not testify that Marion tried to negotiate any further when he could produce only handguns. Production of the handguns left Marion vulnerable to a charge of unlawful use of a weapon by a felon. See *People v. McCarter*, 339 Ill. App. 3d 876, 879-80 (2003); 720 ILCS 5/24-1.1 (West 2006). Ferenzi's testimony makes Marion's behavior improbable, incomprehensible, and contrary to human nature. We find that the State failed to present credible evidence to "explain[ ] Marion's decision to give the police information leading to the discovery of three guns without hearing from the police anything that led him to expect favorable treatment in exchange for the information." *Marion*, 2012 IL App (1st) 082465-U, ¶ 27. The trial court's finding that Marion initiated a conversation with police, spontaneously offering to produce rifles and agreeing to exchange the rifles for a good word from police when he could not produce rifles, is contrary to the manifest weight of the evidence.

¶ 29    Marion's testimony, on the other hand, credibly explains his decision to direct officers to the location of three handguns, even though he knew his ability to produce the guns left him vulnerable to prosecution for unlawful use of a weapon by a felon. Because Marion's credible testimony stands uncontradicted by any credible testimony, we find that a police officer said to Marion, "[Y]ou give me some guns, you can leave with your money and we won't even pursue this case." Marion's credible testimony shows that an officer promised that police would not pursue charges against Marion if Marion gave them information that led them to some guns and helped get the guns off the street.

¶ 30                          Enforceability of Promise

¶ 31    The trial judge also accepted the State's argument that the court cannot enforce the police officer's promise because police lack authority to promise not to arrest and charge a suspect in exchange for the suspect's cooperation with other police work. We apply contract principles to determine the enforceability of the police officer's promise. *United States v. Aleman*, 286 F.3d 86, 89-90 (2d Cir. 2002); *United States v. Carrillo*, 709 F.2d 35, 36 (9th Cir. 1983). The

officer made an offer, which Marion accepted by actually producing guns as the officer requested. The guns supply consideration for the promise. Thus, the court should enforce the promise unless the officer lacked authority to make the promise. See *Mannion v. Stallings & Co.*, 204 Ill. App. 3d 179, 186 (1990); *Suess v. United States*, 535 F.3d 1348, 1359 (Fed. Cir. 2008).

¶ 32 Police officers have discretion to decide how "to handle violations in the field, without the involvement of the State's Attorney." *People v. Hammond*, 2011 IL 110044, ¶ 65. "[W]hen a police officer issues a warning in lieu of a uniform citation, he is exercising his discretion not to enforce the traffic law." *Hammond*, 2011 IL 110044, ¶ 65; 725 ILCS 5/107-2(1)(c) (West 2006). If an officer sees a person apparently violating a criminal law, the officer "has discretion to arrest a person 'immediately, later, or perhaps never.' " *People v. Geier*, 407 Ill. App. 3d 553, 560 (2011) (quoting *People v. Shepherd*, 242 Ill. App. 3d 24, 29 (1993)); 725 ILCS 5/107-2(1)(c) (West 2006); also see *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 760-61 (2005) ("A well established tradition of police discretion has long coexisted with apparently mandatory arrest statutes.").

¶ 33 Police officers also have authority to "seek the voluntary cooperation of members of the public in the investigation of a crime." *Illinois v. Lidster*, 540 U.S. 419, 425 (2004). The *Lidster* Court said that a " '[l]aw enforcement officer may *** request any person to furnish information or otherwise cooperate in the investigation or prevention of crime.' " *Lidster*, 540 U.S. at 425 (quoting ALI, Model Code of Pre-Arraignment Procedure § 110.1(1) (1975)).

¶ 34 We find that police officers have authority to combine these two aspects of the powers delegated to them. An officer can agree not to arrest a suspect–not to initiate the process of bringing a criminal charge–in exchange for the suspect's cooperation in the investigation or prevention of crime. *Hammond*, 2011 IL 110044, ¶ 65; *Lidster*, 540 U.S. at 425. The State gave the police officer who spoke to Marion authority to agree not to arrest Marion in exchange for Marion's cooperation with getting guns off the street.

¶ 35 In *People v. Fournier*, 909 N.Y.S.2d 813 (N.Y. App. Div. 2010), the defendant cooperated with police before the State filed charges against him. The *Fournier* court explained:

> "Facing a possible felony charge for possessing cocaine, defendant entered into a cooperation agreement with law enforcement officials. Some terms of the agreement were set forth in writing and others were agreed to verbally. Defendant wore a wire during a drug transaction and also supplied reliable information. His efforts resulted in the arrest of two other individuals. Law enforcement officials nevertheless determined that he had not fully complied with the agreement and, thus, he was indicted for criminal possession of a controlled substance in the third degree. Defendant moved to dismiss the indictment ***.
>
> *** Defendant testified that he was told by police that he was required to make two or three felony drug purchases and, when he requested this condition be put in writing, the police refused. He thus allegedly recorded a conversation with police regarding these terms of the agreement, and it is undisputed that the police confiscated that recording from defendant and destroyed it. *** Defendant maintained that he was informed by law enforcement officials that his assistance in the arrest of the significant drug dealer resulted in the total fulfillment of his obligation." *Fournier*, 909 N.Y.S.2d at 814.

¶ 36    The *Fournier* court found that the defendant showed that he fulfilled the terms of the agreement, and therefore the court affirmed the dismissal of the indictment. Similarly, in *People v. Smith*, 233 Ill. App. 3d 342, 351 (1992), the court held that cooperation agreements become enforceable once the State has received the benefit of its bargain.

¶ 37    The trial court here, holding to the contrary, relied on *United States v. Flemmi*, 225 F.3d 78 (1st Cir. 2000). In *Flemmi*, a federal agent promised that if Flemmi helped him place an electronic listening device in a useful location, prosecutors would not use against Flemmi any evidence obtained from the device. The agent had no authority to offer use immunity, thereby limiting the prosecutor's use of evidence obtained from the listening device. Here, on the other hand, no occurrence or potential charge had come to the attention of a prosecutor at the time the police officer made his promise. Even if the police officer here could not offer use immunity, the officer had discretion not to arrest Marion and report the narcotics, just as police can decide not to arrest persons seen violating other criminal laws. *Gonzales*, 545 U.S. at 760-61; *Hammond*, 2011 IL 110044, ¶ 65; *Geier*, 407 Ill. App. 3d at 560. As we said in the second appeal in this case, "Police probably should consider gun violence a greater threat to the community than possession of moderate amounts of narcotics. See *People v. Jones*, 357 Ill. App. 3d 684, 690 (2005). A conscientious police officer could choose not to pursue narcotics charges against a suspect in exchange for information that helps police get several illegally held guns off the streets." *People v. Marion*, 2012 IL App (1st) 082465-U, ¶ 23.

¶ 38    We hold that the State has vested police officers with discretionary authority to decide whether or not to arrest persons apparently violating criminal laws and to decide whether or not to report the apparent violations. *Hammond*, 2011 IL 110044, ¶ 65; *Gonzales*, 545 U.S. at 760-61. Police also have authority to promise not to arrest an individual and report an apparently criminal act in exchange for cooperation in the investigation or prevention of crime. *Hammond*, 2011 IL 110044, ¶ 65; *Lidster*, 540 U.S. at 425. Marion credibly testified that police offered not to arrest him for narcotics possession in exchange for help finding guns and getting the guns off the street. The State presented no credible testimony to refute Marion's testimony concerning the agreement. With the permission of police, Marion made phone calls that produced three handguns, thereby fulfilling his part of the bargain. "[T]o allow the government to receive the benefit of its bargain without providing the reciprocal benefit contracted for by the defendant would do more than violate the private contractual rights of the parties–it would offend all notions of fairness in the related criminal proceedings, which are protected by constitutional due process." *Commonwealth v. Sluss*, 419 S.E.2d 263, 265 (Va. Ct. App. 1992).

¶ 39    We hold that Marion proved an enforceable agreement not to arrest him in exchange for producing handguns. We reverse the trial court's judgment and vacate the convictions. Because we find police had actual authority to promise not to arrest Marion in exchange for his cooperation, we need not address Marion's argument about the officer's apparent authority.

¶ 40                                    Petition for Rehearing

¶ 41    In a petition for rehearing, the State argues that Ferenzi's testimony that officers discovered $200 with the guns makes his testimony credible and explains all of Marion's behavior. We do not see how the testimony about the cash explains why Marion spontaneously offered to produce rifles when he could not produce rifles. Ferenzi did not testify that police officers and criminals use a code in which an offer to produce "rifles" means an offer of a cash

bribe. Compare *United States v. Maloney*, 71 F.3d 645, 651 (7th Cir. 1995) (judge said he needed to give books back to defense counsel, meaning he needed to return bribe money). The testimony about the cash, if believed, only supports a conclusion that Marion, or the person he called, thought police officers might take a bribe. See Edward E. Shev & Jeremy Joan Hewes, Good Cops, Bad Cops: Memoirs of a Police Psychiatrist (1977); Francis L. McCafferty & Margaret A. McCafferty, *Corruption in Law Enforcement: A Paradigm of Occupational Stress and Deviancy*, 26 J. Am. Acad. Psychiatry L. 57, 59 (1998); *United States v. Shamah*, 624 F.3d 449, 452-57 (7th Cir. 2010); *United States v. Haynes*, 582 F.3d 686, 692-93 (7th Cir. 2009). But Ferenzi admitted that Marion had more than $1,600 in cash when police arrested him. Marion testified that he had $7,000 in cash. In either case, Marion had ample funds to use for bribery without the ruse of offering handguns or rifles. Ferenzi's testimony about the discovery of $200 does not improve the credibility of his testimony that Marion spontaneously offered to produce rifles when he could not produce rifles, and gave police handguns with no promise of anything in return.

¶ 42    The trial judge implicitly acknowledged his doubts about Ferenzi's credibility, as he finally rested his ruling not on Ferenzi's testimony, but on his belief that Marion lied on the witness stand. The trial judge did not hear Marion testify. The judge based his assessment of Marion's credibility solely on the transcript of that testimony. As we held in our prior order in this case, nothing in the transcript of Marion's testimony warrants the rejection of that testimony as inherently incredible. *People v. Marion*, 2012 IL App (1st) 082465-U. We find that Officer Ferenzi's highly implausible testimony, that Marion spontaneously offered to produce rifles, when he could produce handguns but not rifles, and that he never sought any deal for producing handguns, but just gave them to police, cannot provide a basis for finding that police made no promise to Marion. On denial of the petition for rehearing, we reassert that the trial judge's findings (1) that Ferenzi testified credibly, and (2) that Marion gave the police handguns when police made no promise at all for any favorable treatment in exchange for the handguns are against the manifest weight of the evidence.

¶ 43    In the petition for rehearing, the State also argues that prosecutors and not police officers have authority to decide whether to charge a citizen. But police have authority to decide whether to arrest a person, and here the evidence shows that police reneged on a promise not to arrest Marion in exchange for the production of handguns. The State's failure to keep its promise, made by officers invested with authority to make that promise, requires the court to take the steps necessary to enforce the State's promise. Because the charges followed as a consequence of the arrest, we must dismiss the charges.

¶ 44                                    CONCLUSION

¶ 45    Although this court defers to the trial court's findings of fact, where those findings are "improbable, unconvincing and contrary to human experience," we must reject those findings. *Dawson*, 22 Ill. 2d at 265. Here, the State's sole witness testified that without any prompting from police, Marion spontaneously offered to produce rifles for the police to take off the street, when Marion could produce only handguns, not rifles. Because the State failed to offer any credible rebuttal to Marion's credible testimony, we find that Marion sufficiently proved that he produced the guns in response to a police officer's promise not to arrest him in exchange for getting guns off the street, thereby helping investigate and prevent crime. We also find that police have authority to agree not to arrest a suspect in exchange for his cooperation with

investigating or preventing crime. We find the officer's agreement with Marion enforceable. Because Marion fulfilled his part of the bargain, the officer had a duty not to arrest Marion and not to start the process that led to the charges filed against him. Accordingly, we reverse the trial court's judgment and vacate Marion's convictions.

¶ 46        Reversed; convictions vacated.